## MISSION INDEPENDENT SCHOOL DISTRICT v. STATE OF TEXAS et al.
### No. 9677.

Circuit Court of Appeals, Fifth Circuit.

Dec. 18, 1940.

---

[22] Cf. United States ex rel. Tsevdos v. Reimer, 2 Cir., 108 F.2d 860.

176

Vernon B. Hill, of Mission, Tex., and Ireland Graves, of Austin, Tex., for appellant.

Gerald C. Mann, Geo. W. Barcus, Clarence E. Crowe, Jr., and Claud O. Boothman, all of Austin Tex., for appellee State of Texas.

Claude E. Hamilton, Jr., Gen. Counsel, R.F.C., W. R. Satterfield, Asst. Gen. Counsel, R.F.C., and J. Bowers Campbell, counsel, R.F.C., all of Washington, D. C., for Reconstruction Finance Corporation, as amicus curiae.

A. B. Huguenin, of Dallas, Tex., for amicus curiae.

Before SIBLEY and HOLMES, Circuit Judges, and DAWKINS, District Judge.

SIBLEY, Circuit Judge.

Mission Independent School District, organized under the laws of Texas, sought confirmation of a plan of composition of its bonded indebtedness under Chapter IX of the Bankruptcy Act, 11 U.S.C.A. § 401 et seq. Though it was found and is now conceded that the District, with the utmost diligence and by exercising its full tax powers, is unable to raise the annual interest charges, much less to discharge the principal as it is and will be falling due, and though the plan proposed, to issue refunding bonds dollar for dollar, with interest reduced from a rate of five percent to rates of three percent for twenty years, then four percent for eleven years, and then five percent for nine years, affording opportunity to discharge the principal serially, was accepted by bondholders who held sixty-eight percent of the bonds, the State of Texas holding the remaining thirty-two percent as an investment of its Permanent School Fund, and was found by the court and conceded by the State to be fair and equitable and for the best interest of the creditors affected and not discriminating unfairly in favor of any, and within the legal powers of the District to carry out, the proceeding was dismissed on the motion of the State, on the sole ground that the District Court is without jurisdiction because the School District has not the consent of the State to seek a composition, but consent has been expressly withheld by the Legislature. This appeal seeks a reversal of that conclusion.

The appellant School District, supported as amici curiae by the Reconstruction Finance Corporation and by counsel for five other Texas taxing districts which are seeking similar relief, contends that such is the federal bankruptcy power that no consent by the State is necessary under the provisions of Chapter IX of the Bankruptcy Act; that if consent be necessary it has been given by the Texas Legislature by an Act of April 27, 1935, Vernon's Annotated Texas Statutes Art. 1024a, and again by the Act of June 7, 1939, Id. Art. 1024b; and that the clause of the latter Act, "but this Act shall not apply to any bond or bonds while held by the permanent school fund of Texas", is void because contrary to the Bankruptcy Act in that it seeks to make a discrimination in favor of such bonds, and is avoided by Art. III, § 35 of the State Constitution, Vernon's Ann.St., because unexpressed in the title of the act. In behalf of the State of Texas it is contended that the provisions of the Bankruptcy Act are not available to a political subdivision without consent of the State, and that consent has been withheld where some or all of the bonds of such entity are owned by the State's Permanent School Fund.

■ The general constitutionality of Chapter IX is not contested. United States v. Bekins, 304 U.S. 27, 58 S.Ct. 811, 82 L. Ed. 1137. We forbear to decide whether the Congress may, without the consent of the State, place its political subdivisions in-

to full bankruptcy, voluntary or involuntary. These subdivisions, as debtors, have for many years been subjected to the federal judicial power without state consent, and made to pay their debts so far as under the law of their organization they were able, mandamus to lay, collect and pay over taxes being the usual remedy; but care has been taken not to cripple or embarrass the conduct of governmental functions. A strong argument can be made for the federal bankruptcy power, even by involuntary proceedings, to cause the payment and discharge of debts, with a like regard for governmental functions. But Congress has authorized no involuntary bankruptcy, but only voluntary composition proceedings, such as have become recognized as a proper incident of bankruptcies, undertaken only at the instance of the taxing subdivision, and with an express requirement that nothing shall be agreed on which the state law does not enable it to do. Under such a statute, the State which is the creator of the subdivision and the source of its powers, can forbid its creature to seek a bankruptcy composition, or deny it power to do so. The Legislature can thus make itself the judge of whether a composition should be sought, rather than leave the question to the governing body of the subdivision. If the Legislature should say nothing, the question would become acute, whether the State must expressly consent to this exertion of the federal bankruptcy power, or whether in the absence of a prohibition the governing body of the subdivision can apply for relief under this federal law just as it would enter any other court for legal relief. But here the Legislature has spoken, both by way of consent and prohibition, and the present case turns on the meaning and effect thereof.

Before the decision in Ashton v. Cameron County Water Improvement Dist., 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309, and before the provisions of the Bankruptcy Act for the relief of taxing districts took their present form, the Texas Legislature on April 27, 1935, C. 107, p. 293, made an Act entitled: "An Act authorizing municipalities, political subdivisions and taxing districts to proceed under the provisions of Federal Bankruptcy Laws enacted for the relief of such municipalities, political subdivisions and taxing districts." The body of the Act gave authority to the governing bodies "to proceed under all laws enacted by the

Congress of the United States under the Federal Bankruptcy powers * * * including H. R. 5950 of the Seventy-Third Congress * * *." We think this a clear authorization, or consent if that term be preferred, to proceed under such bankruptcy laws as Congress had made or might make, including the particular law referred to. It would have sufficed after the changes, all done by way of amendment, that have since been made. It would support the present proceeding. However, on June 9, 1939, C. 1, p. 70, an Act was passed with this title: "An Act authorizing municipalities, political subdivisions, and taxing districts to effect a plan for the composition of their indebtedness under the provisions of the Federal Bankruptcy laws heretofore enacted by the Congress of the United States." The body of the Act, down to the last clause, is to the same effect. There was no repealing clause. This Act is not so general as the prior one, because it is limited to seeking compositions under the then provisions of the Bankruptcy Act. But there is no conflict between them as applied to Chapter IX of the Bankruptcy Act. The real change made by the new Act was in its concluding clause: "But this Act shall not apply to any bond or bonds while held by the permanent school fund of Texas." This is a most important provision, for it appears that this school fund owns bonds issued by 2,838 Texas municipalities and political subdivisions, about one-third of all of them. Its purpose and effect is either to deprive all subdivisions of authority to seek a composition if the school fund happens to own one or more of its bonds; or else to exclude the bonds so owned from the operation of any composition made. The latter is the natural meaning, for the words are not that the authorizing Act shall not apply to any subdivision while owing the school fund, but that it shall not apply to the bonds held by the fund. This is further apparent from the fact that the Legislature in passing both Acts thought bankruptcy relief so urgent as to make each an emergency measure; and a slight indebtedness to the school fund could hardly have been intended to stand in the way of any relief to the actual conductors of the schools, such as the Mission School District, in desperate need of relief. The district judge thought that to interpret the Act as seeking to protect the school owned bonds, while authorizing a composition proceeding otherwise, would render it inoperative, be-

cause in conflict with the provision of the Bankruptcy Act which forbids discrimination among creditors of the same class. In this we agree. The Bankruptcy Act as a law of Congress made in pursuance of the Constitution of the United States, is part of the supreme law. It makes no provision for separate or preferential treatment of a bondholding state as a creditor. The State of Texas bought the bonds it holds for the school fund, and paid for them just as others did. It obtained no better right to repayment. The bonds it holds against its own subdivisions as an investment stand just as though they were municipal bonds issued in another state. The State of Texas is simply a bond creditor as others are.

■ The district judge sought to sustain the attacked provision by construing it to be an ambulatory denial of authority to seek composition so long as any subdivision owed bonds to the permanent school fund. This brings it plainly into conflict with Art. 3, Sect. 35 of the Texas Constitution: "No bill * * * shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed." The title as above quoted states that the Act is one to authorize subdivisions to compose their indebtedness. This they already could do under the Act of 1935. The provision in question denies authority, under the proposed construction, to a large class, and by possibility to all of them, when they owe the school fund. A legislator reading the title would suppose that the Act was an adjustment of the Act of 1935 to the new bankruptcy amendments whose language it uses. Its real effect is not to authorize, but to withdraw authority from a third of the Texas subdivisions. The title, under the particular legislative circumstances, is misleading and deceptive. It is not a case of original legislation as to which, if the subject is generally stated, qualifications and exceptions germane to it need not be expressed. The situation is more like that dealt with in three recent cases in the Supreme Court of Texas. In Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799, 803, the title stated the subject as authorizing disposition of community property, but the body of the Act went further and changed what should be community property. The court said: "A caption concealing the true purpose of a statute,

and stating an altogether distinct and foreign purpose, is necessarily deceptive, and cannot be sustained as complying with section 35 of article 3 of the Constitution." So in Ward Cattle & Pasture Co. v. Carpenter, 109 Tex. 103, 104, 200 S.W. 521, the title stated the cattle law was to be amended so as to include named counties, but the Act also omitted a county previously included. The omission was held not effectual, there being as to it "a deceptive and misleading title." And in Gulf Production Co. v. Garrett, 119 Tex 72, 24 S.W.2d 389, 390, the title said the Act provided for the filing, recording and preserving of the court records, but the body of it went further and directed the destruction of the record of any case after ten years from its final disposition. The latter provision was held void, the court observing: "This section of article 3 of the Constitution is intended to prevent clauses from being inserted in the bill of which the title gives no intimation, thereby possibly misleading members of the Legislature of the purpose of the proposed legislation." We therefore think the strained construction adopted in order to preserve this clause is inadmissible. The clause fails of effect, either because in conflict with the provisions of the bankruptcy act or because inserted contrary to the State Constitution.

■ Our attention is called to Article 3, Section 55 of the Texas Constitution: "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any incorporation or individual, to this State, or to any county or other municipal corporation therein." The provision in the Act of 1939 as to bonds held by the school fund does not seem to be based on this constitutional provision, because it is much narrower. The constitutional provision seems intended to protect debts due to the State and its subdivisions owing by individuals and private incorporations. We doubt if it is applicable to a debt by one department of the state government to another. But if it be, we are of opinion that it does not invalidate the general legislative authority given to subdivisions to seek bankruptcy composition, and does not require an express or implied exception of debts due by them to the public. When a composition which affects debts due to the public is proposed, this provision may stand in the way of a

public creditor's consenting to the composition, but it cannot stand in the way of the operation of the Bankruptcy Act if the requisite majority of all creditors do consent. In a fair view, it is not the Legislature which is authorizing the compromise of a debt due the public. It authorizes only an appeal to the federal bankruptcy power. That power in a proper case, judicially established, compromises the debts and includes the public creditor without his consent.

On the facts found by the district judge the composition ought to have been confirmed. The judgment is reversed, with direction to proceed accordingly.

Reversed.